IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

American Civil Liberties Union
    of Ohio Foundation, Inc.,

                Plaintiff,                        Case No. 3:02CV7565

                v.                              ORDER

Board of Commissioners of
    Lucas County, Ohio,

                Defendant.

       This is a civil liberties case. Plaintiff American Civil Liberties Union of Ohio Foundation (ACLU) claims that a monument inscribed with the Ten Commandments (also referred to as the Decalogue) on the grounds of the Lucas County courthouse in Toledo, Ohio, violates the First and Fourteenth Amendments of the U.S. Constitution and Article I, Section 7, of the Ohio Constitution.

       Jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

       The ACLU seeks declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202, and 1983; it also seeks attorneys fees under 42 U.S.C. § 1988(b).

       Pending are the ACLU's and the County's counter-motions for summary judgment. For the following reasons, the County's motion shall be granted, and the ACLU's motion shall be denied.

**Background**

       In June, 1957, the Fraternal Order of the Eagles donated a granite monument bearing the text of the Ten Commandments to the County, which installed the monument at the Southeast corner of the courthouse square. The courthouse is located West of Toledo's downtown business district.

The monument faces away from the courthouse  (Def. Lucas County's Ex. F1; Doc. 21 at 2), and is readily visible to pedestrians approaching the courthouse from downtown Toledo, including lawyers who have their offices in the central business district. Persons arriving by car are likely, though, to park South, West, or Northwest of the courthouse square; their direct path to the courthouse, which can be entered only from the West, would not take them past the monument.

The monument depicts two tablets resembling traditional portrayals of the Decalogue as brought, according to the Biblical account, by Moses from Mount Sinai. (Def. Lucas County's Ex. F1 (containing photos of the monument); *see also* Doc. 21 at 2 (describing the monument); Doc. 29 at 2 (same)). Other symbols adorn the monument above and below the text of the Commandments, including: 1) two smaller, inscribed tablets with Greek text; 2) a bald eagle and United States flag; 3) the "all seeing eye" (also found on the Great Seal of the United States); 4) two stars of David, commonly associated with the Jewish faith and the state of Israel; and 5) the Chi-Rho symbol, a first century image used by early Christians. (Def. Lucas County's Ex. F1; *see also* Doc. 29 at 2).

At the bottom of the monument is the following, inscribed as if etched on a scroll:

PRESENTED TO THE COUNTY OF

LUCAS, STATE OF OHIO

BY

TOLEDO AERIE NO. 197

FRATERNAL ORDER OF EAGLES

1957

(Def. Lucas County's Ex. F1).

2

The words, "the Ten Commandments," followed by "I AM the LORD thy God" appear on separate lines above the text of the individual commandments. The lettering of that caption is larger than that of the other writing on the monument. (Def. Lucas County's Ex. F1).

The Eagles presented many similar monuments to local governments in the 1950s and 1960s. *See generally ACLU v. City of Plattsmouth*, 419 F.3d 772, 773 n.3 (7th Cir. 2005) (describing the history of the monuments). They provided the monuments as  part of a nation-wide campaign to counteract juvenile delinquency - to call the attention of young people to the moral code embodied in the Ten Commandment's text. *Id.* (citing cases referring to the prevention of juvenile delinquency as motivating factor for the actions of the Eagles); *see also Twombly v. City of Fargo*, 388 F. Supp. 2d 983, 985 (W.D. Wash. 2005).

With specific reference to the Lucas County monument, a contemporary newspaper article in the record in this case states the Eagles presented the Lucas County monument "as part of its youth guidance program." (Def. Lucas County's Ex. A).[1]

The monument stands several feet from a flag pole set in a concrete base. The flag pole is a Catholic War Veterans Memorial, with an inscription reading, "Catholic War Veterans of the United States of America, for God, country and home, April 19, 1957." (Def. Lucas County's Exs. F (map of courthouse grounds), F1 (photos), F2 (same)).

---

[1]

Some of the cases addressing similar monuments the Eagles provided also mention that, on learning about the Eagles' program (which originally involved distribution of printed copies of the Decalogue), Cecil B. DeMille, producer of the film *The Ten Commandments*, offered to underwrite distribution of hundreds of monuments to local governments on behalf of the Eagles. *See, e.g., Card v. City of Everett*, 386 F. Supp. 2d 1171, 1174 (W.D. Wash. 2005); *Chambers v. City of Frederick*, 292 F. Supp. 2d 766, 769 (D. Md. 2003). DeMille did so under the belief that distributing the monuments might promote his "Hollywood blockbuster movie . . . .'" *Card*, 386 F. Supp. 2d at 1176. The parties have not, however, submitted evidence showing DeMille paid for the Lucas County monument.

Among fourteen other memorials spread about the courthouse square are, *inter alia*, a stone monument of the Bill of Rights (donated by the ACLU in 1959) (Def. Lucas County's Ex. F2); a statue and memorial to Spanish-American War veterans (Def. Lucas County's Ex. F4, F5); and a statue honoring Ohio-born President William McKinley. (Def. Lucas County's Ex. F3, F4).

Six of the markers on the courthouse lawn are in the same general area as the Ten Commandments; the remainder are closer to the courthouse and further from the monument. (Doc. 29 at 3). Two markers on the grounds are historical markers explaining noteworthy information about Lucas County's history. (*Id.*) Some others are plaques from various groups noting commemorative trees on the lawn. (*Id.*)

In addition to the Decalogue monument and Catholic War Veterans Memorial, the statue of President McKinley also incorporates a religious reference: it quotes President McKinley as saying on his deathbed, "Nearer my God to thee," and "Goodbye all, Goodbye. It is God's way. His will be done, not ours." (Def. Lucas County's Ex. F3, F4).

The Ten Commandments monument was installed and dedicated in June, 1957, during a public ceremony. (*Id.*) Two judges, one county commissioner, Toledo's mayor, and two representatives of the Eagles participated. (*See id.* (newspaper photo of dedication ceremony and accompanying caption)). The news accounts do not record the presence or participation at the dedication ceremony of clergy or other representatives of religious organizations. (*Id.*) Local religious leaders did, however, write letters to the Board of Commissioners supporting the placement of the monument. (*Id.*) Commission Chairman Ray Gedert was quoted in a June 15, 1957, newspaper as stating, "If everyone read and followed the inscription, there would be less need for the

4

courthouse building behind the marker." (*Id.*) There is no other evidence concerning the Board's purpose in accepting the monument from the Eagles.

On November 26, 2003, the ACLU brought suit, alleging that continued display of the Decalogue on the courthouse lawn violates the Establishment Clause of the First Amendment. No one had filed a formal complaint in the forty-six years prior to the ACLU lawsuit. (Doc. 21 at 2).

The County contends the monument "reflect[s] historical notions of law" and commemorates the role of the Decalogue "in the enforcement of the rule of law." (Doc. 21 at 2). The County asserts the monument "was erected for secular purposes reflecting Lucas County's commitment to the rule of law as enforced in the Courthouse behind the Statue." (Doc. 21 at 1).

This case was stayed when the Supreme Court granted certiorari in *ACLU v. McCreary County*, 354 F.3d 438 (6th Cir. 2003), and *Van Orden v. Perry*, 351 F.3d 173 (5th Cir. 2003). On July 27, 2005, the Court issued its opinion in both cases. The parties in this case filed supplemental briefs to discuss the significance of *Van Orden v. Perry*,     U.S.    , 125 S.Ct. 2854 (2005), and *McCreary County v. ACLU*,     U.S.    , 125 S.Ct. 2722 (2005).

There is  no disagreement between the parties about the material facts, only disputes of legal interpretation. Thus this case is well-suited for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure.

## I. Standing

As an initial matter, the County contends the ACLU does not have standing to bring this suit.

An association may sue on behalf of its members if: 1) its members would have standing in their own right; 2) the interests the organization seeks to protect are important to its purpose; and 3) the claim asserted and the relief sought do not require participation by individual members in the

5

suit. *Hunt v. Washington Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 523-24 (6th Cir. 2001); *see also Mixon v. State of Ohio*, 193 F.3d 389, 393 n.1 (6th Cir. 1999).

The ACLU is suing Lucas County on behalf of its members. Charles Boss, an attorney who practices in Lucas County and is a dues-paying, registered member of the ACLU, testified that the monument offended him and diminished his use and enjoyment of the courthouse and its grounds. (Def. Lucas County's Ex. C at 6-7, 12-14, 35-44; Pl.'s Ex. A at ¶¶ 1, 5, 6, 7; Doc. 29 at 3).

The County alleges Boss would not have standing in his own right, and, consequently, the ACLU does not have standing either. To have standing Boss must show he suffers an injury the court can remedy. *Washegesic v. Bloomingdale Public Schls.*, 33 F.3d 679, 682 (6th Cir. 1994). The County argues Boss can not make that showing.

In cases involving public display of a religious object, "unwelcome direct contact with the object" that causes diminished enjoyment of public facilities confers standing on a plaintiff. *Id.*; *Hawley v. City of Cleveland*, 773 F.2d 736, 738-39 (6th Cir. 1985) (representative plaintiff's diminished enjoyment of airport from presence of chapel conferred standing); *Harvey v. Cobb County*, 811 F. Supp. 669, 674-75 (N.D. Ga. 1993) (attorney whose practice required him to make regular appearances in local courthouse had standing to challenge county's placement of Ten Commandments on wall outside clerk's office).

Unnwelcome contact has been found with regard to Decalogue monuments on public grounds or premises. *See, e.g., Books v. City of Elkhart*, 235 F.3d 292, 299-301 (7th Cir. 2001) (finding standing where plaintiffs were forced to see a Ten Commandments monument because of a right or duty to enter a municipal building where it was located); *ACLU v. Hamilton County*, 202

6

F. Supp. 2d 757, 761-62 (E.D. Tenn. 2002) (standing exists where association members must enter a courthouse with a Ten Commandments display because, *inter alia*, residents must go to the courthouse to renew automobile license tags); *Adland v. Russ*, 107 F. Supp. 2d 782, 784 (E.D. Ky. 2000) aff'd, 307 F.3d 471 (6th Cir. 2003) (plaintiff had standing because its members frequently travel to state capitol, which has a Ten Commandments monument on its grounds); *ACLU v. Pulaski County*, 96 F. Supp. 2d 691, 694 (E.D. Ky. 2000) (plaintiffs had standing because they needed to conduct civic business in a courthouse with a Ten Commandments exhibit).

Nevertheless, the County argues Boss's beliefs about the monument are insincere. In support, defendants suggest Boss is "politically selective" about which public references to God offend him. (Doc. 33 at 5-6; *see also* Doc. 21 at 4-5 (referring, *inter alia*, to portions of Boss's deposition testimony indicating he never suffered diminished enjoyment of any event where the Pledge of Allegiance was recited)).

Lucas County has not, however, cited any case in which a representative plaintiff's standing to challenge a public display of a religious text hinged on whether the plaintiff was equally offended by all forms of public religious expression. This court finds no basis in law for undertaking the difficult and unpromising task of parsing an individual's beliefs to determine whether they are "sincere" or not. Boss has stated he finds the monument and its presence in proximity to the courthouse offensive and unwelcome: That suffices. Boss, and thus the ACLU, have standing. [2]

## II. The Substantive First Amendment Issues

---

[2]

Defendants do not appear to challenge the ACLU's standing on any other grounds.

The First Amendment states: "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. The Fourteenth Amendment incorporates the First Amendment's requirements as applicable to the states. *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301 (2000).

The Supreme Court has had difficulty applying the Establishment Clause to Ten Commandments monuments. *See generally* Jay A. Sekulow & Francis J. Manion, *The Supreme Court and the Ten Commandments: Compounding the Establishment Clause Confusion*, 14 Wm. & Mary Bill Rts. J. 33 (2005) (lamenting the Supreme Court's failure "to clear away the fog obscuring religious display cases"); *see also Twombly v. City of Fargo*, 388 F. Supp. 2d 983, 986 (D. N.D. 2005) ("The body of law as developed is convoluted, obscure, and incapable of succinct and compelling direct analysis.").

In 2005, the Supreme Court held that a monument donated by the Eagles, like the one at issue here, and located on the grounds of the Texas Capitol was constitutionally acceptable. *Van Orden*, 125 S. Ct. at 2864. The Court reached the opposite conclusion with regard to inclusion of the Ten Commandments in a courthouse display of several documents deemed to have historical significance for the development of American law.  *McCreary County*, 125 S. Ct. at 2745.

Factually, the cases were very different. In *Van Orden,*"the 22 acres surrounding the Texas State Capitol contained 17 monuments and 21 historical markers commemorating the 'people, ideals, and events that compose Texan identity.'" 125 S.Ct. at 2858 (citation omitted). The collection of monuments and memorials in *Van Orden* included:

> Heroes of the Alamo, Hood's Brigade, Confederate Soldiers, Volunteer Fireman, Terry's Texas Rangers, Texas Cowboy, Spanish-American War, Texas National Guard, Ten Commandments, Tribute to Texas School Children, Texas Pioneer Woman, The Boy Scouts' Statue of Liberty Replica, Pearl Harbor Veterans, Korean War Veterans, Soldiers of World War I, Disabled Veterans, and Texas Peace Officers.

8

*Id.* n.1.[3]

In *McCreary County*:

[P]etitioners ... (hereinafter Counties), put up in their respective courthouses large, gold-framed copies of an abridged text of the King James version of the Ten Commandments, including a citation to the Book of Exodus.In McCreary County, the placement of the Commandments responded to an order of the county legislative body requiring "the display [to] be posted in 'a very high traffic area' of the courthouse." 96 F.Supp.2d 679, 684 (E.D.Ky.2000). In Pulaski County, amidst reported controversy over the propriety of the display, the Commandments were hung in a ceremony presided over by the county Judge-Executive, who called them "good rules to live by" and who recounted the story of an astronaut who became convinced "there must be a divine God" after viewing the Earth from the moon. Dodson, *Commonwealth Journal*, Jul. 25, 1999, p. A1, col. 2, in Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction in Civ. A. No. 99-509 (ED Ky.) (internal quotation marks omitted). The Judge-Executive was accompanied by the pastor of his church, who called the Commandments "a creed of ethics" and told the press after the ceremony that displaying the Commandments was "one of the greatest things the judge could have done to close out the millennium."

*Id.* at 2728 (footnote omitted).

In addition, the Court used different tests in the two cases. As those cases are the Court's most recent statements on the subject, I shall analyze the ACLU's claims under their reasoning.[4]

### A. *McCreary County*: The *Lemon* Test

_____

[3]

For more detailed information about the monument challenged in *Van Orden* and the Texas Capitol grounds, *see* Greg Abbott, *Upholding the Unbroken Tradition: Constitutional Acknowledgement of the Ten Commandments in the Public Square*, 14 Wm. & Mary Bill Rts. J. 51, 53 (2005) (hereinafter, *Upholding theUnbroken Tradition*). Mr. Abbott, the Attorney General of Texas, argued *Van Orden* for the Respondent.

[4]

There exist still more tests the Supreme Court has developed that could apply to claims like this one. *See Twombly*, 388 F. Supp. 2d at 986 ("There currently exist numerous tests, with varying levels of applicability in various contexts, each of which stakes some claim of suitability to discern whether a government action is violative of the Establishment Clause."); see also p. 18, n.12, *infra*.

In *McCreary County*, the court applied the *Lemon* test, *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971), which is sometimes supplemented by the endorsement test. *See Wallace v. Jaffree*, 472 U.S. 38, 76 (1985).[5]  For purposes of the monument and issues in this case, these tests will be viewed as equivalent and discussed under the rubric of *Lemon*.

Under the *Lemon* test, state action is constitutional and therefore permissible if: 1) it has a secular purpose; 2) its primary effect does not advance or inhibit religion; and 3) it does not foster excessive government entanglement with religion. *Id.*[6]

The first, or "purpose," prong involves a subjective inquiry into the governmental actor's intent: i.e., did such actor intend to send a message endorsing a particular religion. *Lynch v. Donnelly*, 465 U.S. 668, 691 (1984) (O'Connor, J., concurring).

The second, or "effects," prong involves an objective inquiry; namely, whether the challenged display or activity would cause a reasonable observer to conclude the government was endorsing a particular religion. *Id.* at 692. One of the attributes of the reasonable observer in this test is that he or she is deemed to be aware of the monument's history and therefore its purpose. *Id.*

### 1. The Issue of Purpose

---

[5]

Some courts consider the first two prongs of the *Lemon* test to constitute the "endorsement" test, with greater emphasis placed on the effects prong. *See Lynch v. Donnelly*,  465 U.S. 668, 690-92 (1984); *see also Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001) (stating "the first two prongs [. . .] have been refined and dubbed the 'endorsement test'"); *Books v. City of Elkhart*, 235 F.3d 292, 301 (7th Cir. 2000) (same). Other courts, however, equate the effects prong with the endorsement test, perhaps because that prong is central to the inquiry. *ACLU  v. Ashbrook*, 35 F.3d 484, 503 (6th Cir. 2004) ("In order to ascertain the primary effect of the action under the second prong of the *Lemon* test, we apply the 'endorsement' test.").

[6]

In this case, the ACLU does not argue the third prong – government entanglement with a particular religion.

In *McCreary County*, the Supreme Court emphasized the first prong of the *Lemon* test, stating the government must show a predominately secular purpose for the posting or display in a governmental setting of material derived from a religion. 125 S. Ct. at 2736. The Court rejected the county's claim that the display was motivated by a secular purpose and held that it violated the First Amendment. 125 U.S. at 2739-40, 2745.

To evaluate the purpose prong, a court must determine if the stated secular purpose for the religious display is sincere or a pretext. *See Santa Fe Indep. Sch. Dist.,* 530 U.S. at 308 (O'Connor, J., concurring in the judgment). Generally, a court must defer to the government's stated purpose, *McCreary County*, 125 S. Ct. at 2735, but deference is not warranted "in those unusual cases where the claim was an apparent sham." *Id.* at 2736. Notably, "a finding of impermissible purpose should be rare" and restricted to circumstances where the impermissible purpose "emerges from readily discoverable facts." *ACLU v. Mercer County*, 432 F.3d 624, 630 (6th Cir. 2005).

In light of the Court's application of the purpose prong in *McCreary*, displays of the Decalogue, even in a courthouse, if undertaken without a religious purpose, may be constitutionally acceptable. Thus, in *Mercer County,* the Sixth Circuit, in its first post-*McCreary County/Van Orden* Ten Commandments case, upheld the constitutionality of a courthouse exhibit "identical in all material respects . . . to the . . . displays found unconstitutional in *McCreary*." 432 F.3d at 626. The court reached this conclusion because that display of several documents deemed to be historical antecedents to the American legal system had been posted by a single individual acting on his own, without the religious endorsement and overtones present in *McCreary County*. *Id.* at 634.[7] "To be

---

[7]

The Supreme Court has "repeatedly" held that the Ten Commandments have historical importance. *See Mercer County*, 432 F.3d at 634 (collecting cases and citing, *inter alia*, *Van Orden* and *McCreary*).

11

problematic," the court stated in *Mercer County*, "there must be something more to signal a predominantly religious purpose." *Id.*

In this case, the rather scant record indicates the Eagles donated the Decalogue monument to promote a moral code of conduct, rather than religious dogma, and they did so as part of a broad-reaching effort by that organization to reduce juvenile delinquency. There is no reason  – at least none in the record – to doubt that the County accepted the monument on the basis on which it was offered. Indeed, the single comment in the record attributed to a county official at the dedication was to the effect that, if young people paid attention to the statements on the monument, there would be less need for the courthouse in the background. (Def. Lucas County's Ex. A). Both parties appear, accordingly, to have been motivated by a predominantly secular purpose: to encourage law-abiding conduct on the part of young people.

The Supreme Court specifically included combating juvenile delinquency by depicting a moral code of conduct as a legitimate secular purpose. *Van Orden*, 125 S. Ct. at 2859. Thus, under *Lemon's* purpose prong, the Lucas County Decalogue is not constitutionally suspect.

### 2. The Issue of Effect

The second prong of the *Lemon* test is the "effects" prong. Here, the issue is whether an objective observer would view the state action as endorsing religion. *Lynch v. Donnelly*,  465 U.S.

---

The ACLU cites *Stone v. Graham*, 449 U.S. 39, 41-43 (1980), for the proposition that the Ten Commandments lack a secular purpose and are "plainly religious in nature." *Id.* at 41.  The Supreme Court has since retreated from the idea that *Stone* represented a per se rule against displaying the Ten Commandments in connection with government activities (e.g., in schools) or on government property. *See, e.g., Edwards v. Aguillard*, 482 U.S. 578, 593-94 (1987); *McCreary County*, 125 S. Ct. at 2737-38; *see also ACLU v. Mercer County*, 432 F.3d 624, 634 (6th Cir. 2005) ("Whatever is left of *Stone* [after *McCreary County*] is limited to circumstances involving public displays of the Ten Commandments in isolation.").

668, 690-92 (1984); *see also Capitol Square*, 515 U.S. 753, 779-81 (1995) (O'Connor, J., concurring in part and concurring in the judgment); *County of Allegheny v. ACLU*, 492 U.S. 573, 595 (1989); *Wallace v. Jaffree*, 472 U.S. 38, 76 (1985) (O'Connor, J., concurring in the judgment) (stating the proper test was whether an "objective observer, acquainted with the text, legislative history, and implementation of the statute, would perceive it as a state endorsement of prayer in public schools"); *ACLU v. Mercer County*, 432 F.3d 624, 635 (6th Cir. 2005) (describing the endorsement test); *Granzeier v. Middleton*, 173 F.3d 568, 673 (6th Cir. 1999); *Americans United for Separation of Church & State v. City of Grand Rapids*, 980 F.2d 1538, 1543-44 (6th Cir. 1992).

The "objective" observer is the "personification of a community ideal of reasonable behavior" and analogous to the "reasonable" person in tort law. *Capitol Square*, 515 U.S. at 780.[8]

Courts assess various characteristics in their effort to perceive how a reasonable person would view the monument in question. For example: 1) sponsorship by a civic organization, despite the monument's religious text, weighs "against the probability that the religious message will be attributed to the state," *Twombly v. City of Fargo*, 388 F. Supp. 2d at 983, 990 (D. N.D. 2005) (citing *Van Orden*, 125 S. Ct. at 2870 (Breyer, J., concurring)); 2) the monument's proximity to government buildings is a factor, but is not alone determinative, *see Id.*, 388 F. Supp. 2d at 991 (citing *Van Orden* and collecting cases analyzing religious displays based on proximity to public buildings); and 3) if a monument containing a text derived from a religious source is found among memorials to secular events or individuals, it will be less likely to violate the Establishment Clause. *See Mercer*

---

[8]

This approach is not without its critics. *See, e.g.,* Kirsten K. Wendela, *Context is in the Eye of the Beholder: Establishment Clause Violations and the More-Than-Reasonable Person*, 80 Chi.-Kent L. Rev. 981 (2005) (criticizing the manner in which the endorsement test invokes the perspective of a "reasonable observer").

*County,* 432 F.3d at 637-38 ("When placed on a level with other documents having such unquestioned civil, legal, and political influence, the [Ten] Commandments' own historical significance becomes more pronounced.").

The Lucas County monument stands at a principal entry point onto the courthouse grounds. Any impression that the County thereby endorses Judeo-Christian religious doctrine or dogma is, however, countered by the express statement that the Eagles donated the monument. That statement might well cause an observer to conclude that the Eagles are promoting religion; but it also makes it less likely that the observer would conclude the County was promoting religion in general or a specific sect in particular.

The fact that other memorials are on the Lucas County courthouse square has less significance than that ascribed to it by the parties. The most prominent features of the courthouse square, aside from the century old building itself, are the statues of President McKinley in front of the South entrance, and of a Spanish-American War volunteer at the North entrance. The other markers and memorials are scattered about in a rather random and apparently unplanned manner.

This setting is not, therefore, the quasi-theme park of historically significant artifacts at issue in *Van Orden*. Nonetheless, the physical context of the monument would not cause an objective observer to conclude the County is using it to proclaim religious doctrine. This would be particularly true if the observer were, as the effects prong requires, cognizant of the of the monument's history. That history necessarily includes the secular purpose that underlay the Eagles' widespread distribution of this and similar monuments.

As with the purpose prong, under the effects prong, the Lucas County Decalogue is constitutionally permissible. While some who see it may read its text as a proclamation of faith, and

14

give it a measure of devotion, the Lucas County Decalogue neither compels that interpretation nor commands that response on the part of an objective observer.

## B. *Van Orden*

In *Van Orden*, Chief Justice Rehnquist wrote an opinion in which Justices Scalia, Kennedy, and Thomas joined. *Van Orden*, 125 S. Ct. at 2858 (plurality opinion). According to the Chief Justice, the *Lemon* test was "not useful in dealing with the sort of passive monuments that Texas has erected on its Capitol grounds." *Id.* at 2861. He focused his analysis on the history of religion in the United States and the particular monument's context on the capitol grounds. *Id.*

The Chief Justice asserted that it was improper for federal courts to ignore the historical influence that religion, including the Ten Commandments, has had on American society. *Id.* at 2861-63 (stating, *inter alia*, there was an "unbroken history of official acknowledgment by all three branches of government of the role of religion in American life").  According to the Chief Justice, allowing a Decalogue on public property alongside monuments of a distinctly secular character did not constitute state promotion of a particular religion. *Id.* In that setting, with secular monuments and memorials within the same area, the text could most properly be viewed as expressing the history and ideals of the people of Texas. *Id.* at 2869-70.

Writing separately, Justice Breyer concurred only in the judgment in *Van Orden*. *Id.* at 2868. His opinion is important "because, of the five Justices who voted to allow the continued display of the Texas monument, his opinion reflects the narrowest interpretation of the Establishment Clause." *Card*, 386 F. Supp. 2d at 1176 (citations omitted) ("when no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds").

Justice Breyer also rejected the applicability of the *Lemon* test to the circumstances in *Van Orden*, 125 S. Ct. at 2868-73, but did not articulate a clear alternative legal test or standard.[9] Indeed, he stated his decision was not the result of "literal application of any particular test" because no test is a suitable "substitute for the exercise of legal judgment." *Van Orden*, 125 S. Ct. at 2869-71 (Breyer, J., concurring).[10] Justice Breyer focused on evaluating the religious display in "context," which includes its "historic, temporal, and physical setting." *See Card*, 386 F. Supp. 2d at 1173 (citing to and applying *Van Orden*).

In applying his "legal judgment," Justice Breyer looked at several factors: 1) the circumstances surrounding the Ten Commandments monument's placement; 2) who donated the monument (a civic [i.e., secular] or religious organization); 3) the physical setting of the monument, including whether other secular monuments were nearby; 4) the "divisiveness" that would result by allowing challenges to longstanding religious monuments;[11] and 5) the fact that no one had filed a formal legal objection to the monument in the forty years it had been on the capitol's grounds. *Van Orden*, 125 S. Ct. at 2870 (Breyer, J., concurring). Justice Breyer called the last factor "determinative." *Id.* Applying these factors, Justice Breyer concluded that the monument in *Van*

---

[9]

*See* Erwin Chemerinsky, *Why Justice Breyer was Wrong in* Van Orden v. Perry, 14 Wm. & Mary Bill Rts. J. 1 (2005) (hereinafter *Breyer*). Professor Chemerinsky represented the Petitioner in *Van Orden*.

[10]

Professor Chemerinsky contends Breyer "accepts the test adopted by the four dissenting justices" in *Van Orden*, which held that "the government may not place religious symbols on government property if [the symbols] symbolically endorse religion." Chemerinsky, *Breyer*, 14 Wm. & Mary Bill Rts. J. at 2 (citing *Van Orden*, 125 S. Ct. at 2872 (Breyer, J., concurring)).

[11]

Justice Breyer stated the purpose of the Establishment Clause was to prevent religious divisiveness. 125 S. Ct. at 2871 (Breyer, J., concurring).

*Orden* served "a mixed but primarily nonreligious purpose" and thus was constitutional. *Id.* at 2871 (Breyer, J., concurring)

Since *Van Orden*, federal courts have uniformly permitted public displays of Ten Commandments monuments. *See, ACLU v. Plattsmouth*, 419 F. 3d 772, 778 (7th Cir. 2005) (*en banc*) (holding that an Eagles-donated Ten Commandments monument (which stood alone in a public park) was constitutional.); *Card*, 386 F. Supp. 2d at 1174-77 (monument, one of several on city property, was constitutional despite participation of clergy at its dedication ceremony); *Twombly*, 388 F. Supp. 2d at 985 (free-standing monument on public mall was constitutional, although clergy attended the dedication ceremony); *Russelburg v. Gibson County*, 2005 WL 2175527 (S.D. Ind. Sept. 7, 2005) ( monument one of several on county courthouse grounds).

The Lucas County monument is similarly permissible. The monument here is part of an assemblage of several markers, memorials, and monuments on the courthouse lawn. Though the collection appears to lack a cohesive or unitary purpose, placement of this monument among others of a secular and commemorative character weighs in favor of constitutional acceptability. *Van Orden*, 125 S. Ct. at 2870 (Breyer, J., concurring).

To be sure, the Lucas County monument is in a prominent location beside a common route to the courthouse. But that factor is not determinative. *See Twombly*, 388 F. Supp. 2d at 990-92 (finding monument constitutional though it was "neither far removed from government buildings nor surrounded by a collection of secular monuments").

The secular purpose with which the monument was presented to, and accepted by, the County is underscored by the secular nature of the installation ceremony. In this case, unlike many involving similar monuments, no clergy attended the dedication ceremony.

The monument has, moreover, stood without comment or complaint as long as any of the monuments challenged elsewhere. Like those monuments, the Lucas County Decalogue has maintained an undisturbed civic presence for decades. For Justice Breyer, this was, as noted, an important consideration. *Van Orden*, 125 S. Ct. at 2870 (Breyer, J., concurring).

Thus, under either the plurality or concurring opinion in *Van Orden*, which is the Supreme Court's most factually similar case, the Lucas County Decalogue is constitutional.[12]

### III. Ohio Constitutional Claims

---

[12]

Two other tests the Court has used to analyze similar claims are the "no more than" test, *Lynch v. Donnelly*, 465 U.S. 668, 682-83 (1984), and the "coercion test," *Lee v. Weisman*, 505 U.S. 577, 596-97 (1992). The Lucas County monument is constitutional under those analyses as well.

Under the "no more than" test, a government action passes constitutional muster if it identifies the government with a particular religion no more than other commonplace, traditional practices. *Lynch*, 465 U.S. at 682-83.  Here, the monument does not identify the government with a particular religion any more than the Ten Commandments monument permitted in *Van Orden*. The plurality in that case noted, moreover, that displays of the Ten Commandments on government property have been commonplace throughout the country's history. 125 S. Ct. at 2859.

Under the "coercion" test, a state action violates the Establishment Clause if it has a "coercive effect" on nonbelievers. The Court seems inclined to employ the "coercion" test in cases involving religious acts in school settings. *See Id.* at 592 (stating "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools). That said, "the concern [is] not [] limited to the context of schools" *Id.*

In this case, the government's acceptance of a Decalogue monument on its courthouse grounds does not coerce nonbelievers into participating in a religious act. The monument's presence does not leave passers-by with "no real alternative" to "avoid the appearance of participation" in Judeo-Christian religion practices. *Lee*, 505 U.S. at 588. A passive Ten Commandments monument is not coercive: one is free to ignore it, walk around it, or otherwise avoid it. *Van Orden*, 125 S. Ct. at 2864 (stating the plaintiff could ignore the Ten Commandments monument and had, in fact, walked by it for many years before filing suit).

Thus, these other tests support the conclusion that the Lucas County monument is constitutional.

A federal court can decline to exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), when it has dismissed "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed all of the ACLU's federal claims, I decline to exercise supplemental jurisdiction over the remaining claims based on the Ohio Constitution. Accordingly, the ACLU's remaining state constitutional claims will be dismissed without prejudice.

## Conclusion

When examined in light of recent Supreme Court precedent, the Lucas County monument survives constitutional challenge.

The majority in *McCreary County* endorsed the *Lemon* test; under that test, the County is entitled to a finding that its Decalogue does not contravene the Establishment Clause of the First Amendment.  The record shows that the Eagles, in donating, and the County, in accepting the monument were acting with a purpose – to combat juvenile delinquency – that was secular.

Considering the effect of the monument under *Lemon*, I am persuaded that an objective observer could not conclude that the monument, despite the sectarian antecedents of its text, has the effect of endorsing religion in general or the specific tenets of any particular sectarian assembly.

In addition, the Chief Justice's plurality opinion and Justice Breyer's concurring opinion in *Van Orden* likewise give an imprimatur of constitutionality to the Lucas County monument. That it has stood unchallenged for nearly five decades is an important consideration; indeed, for Justice Breyer, author of the opinion that decided the outcome of *Van Orden*, its undisturbed tenure would be "determinative." 125 S. Ct. at 2870 (Breyer, J., concurring).

Consequently, in light of the foregoing, it is

19

ORDERED THAT the defendant's motion for summary judgment be, and the same hereby is granted, and the plaintiff's motion for summary judgment be, and the same hereby is denied.

.

s/James G. Carr
James G. Carr
Chief Judge